UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AHMADOU SANKARA,

        Petitioner,

   v.                                              18-CV-1066
                                                     DECISION AND ORDER
MATTHEW G. WHITAKER,
Acting Attorney General;

THOMAS FEELEY, Field office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and
Customs Enforcement, and

JEFFREY SEARLS, Facility Director,
Buffalo Federal Detention Facility,

        Respondents.

---

Ahmadou Sankara is a native of Cote d'Ivoire ("Ivory Coast") and a citizen of Burkina Faso. Docket Item 11-1 at 2. His most recent detention by the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, began on September 7, 2018. Docket Items 11-1 at 9, 11-2 at 4.

Before this Court is Sankara's petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking his release. Docket Item 1. On December 13, 2018, the respondents answered and filed a memorandum opposing Sankara's petition. Docket Items 11, 13. On January 3, 2019, Sankara replied. Docket Item 14. Sankara also has filed two motions for release from custody, Docket Items 3 and 4, and a motion to

appoint counsel, Docket Item 10. For the following reasons this Court denies his petition for a writ of habeas corpus and his motions without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from DHS filings.

Sankara entered the United States in New York City on August 27, 2001, with authorization to remain in the country until November 26, 2001. Docket Item 11-2 at 2. About five years later, he apparently was charged with a crime and detained at the Riker's Island Correctional Facility in East Elmhurst, New York ("Riker's Island"). *Id*. Sankara encountered DHS agents after his release. *Id*. The government then sought his removal, and he was released on his own recognizance. *Id*.

In 2008, Sankara failed to appear for his removal hearing, which was held *in absentia* before Immigration Judge ("IJ") William Van Wyke. *Id*. at 44. IJ Van Wyke found Sankara to be removable as charged. *Id.*

In October 2008, Sankara was arrested and charged with criminal possession of a controlled substance in the seventh degree. Docket Items 11-1 at 3, 11-2 at 41. He again was detained at Riker's Island, and upon his release he was taken into DHS custody. Docket Items 11-1 at 3, 11-2 at 41.

On November 13, 2008, DHS requested a travel document for Sankara from the Embassy of Burkina Faso. Docket Item 11-2 at 55. On February 6, 2009, the Embassy of Burkina Faso issued a "temporary passport for return to Burkina Faso" with an expiration date of May 5, 2009. *Id*. at 56. DHS received the document on February 12, 2009. Docket Item 11-1 at 4.

On February 26, 2009, with some assistance from a law school clinic, Sankara moved to reopen and rescind the IJ's removal decision "due to exceptional circumstances, requesting a stay of removal." Docket Item 11-2 at 35-36. IJ Van Wyke granted his request on March 23, 2009, *id.* at 36, and Sankara again was released on his own recognizance on April 1, 2009, *id.* at 33.

In July 2010, Sankara again was arrested—this time for grand larceny in the fourth degree and criminal possession of stolen property in the fifth degree. Docket Item 11-1 at 4. Again, he was taken into DHS custody after his release from Riker's Island. *Id.* at 5. In March 2011, an IJ ordered Sankara released from custody upon posting a $3,500.00 bond. Docket Item 11-2 at 30.

In July 2012, Sankara was arrested and charged with unauthorized use of a motor vehicle without the owner's consent and criminal possession of a controlled substance in the seventh degree. Docket Items 11-1 at 5; 11-2 at 26. On July 20, 2012, after DHS served Sankara with additional charges of deportability, IJ Alan Page ordered Sankara removed to Burkina Faso or, in the alternative, Ivory Coast. Docket Item 11-2 at 27. Sankara timely appealed to the Board of Immigration Appeals ("BIA"), which dismissed the appeal and declined to address his request for stay of removal in a decision dated July 15, 2013. Docket Items 11-1 at 6, 11-2 at 22-24.

In the meantime, in October 2012, Sankara was arrested again. He was charged with criminal possession of a forged instrument in the first degree and identify theft in the second degree, Docket Items 11-1 at 6, 11-2 at 26, and on November 16, 2012, he was placed in DHS custody upon his release from the Nassau County Correctional Center. Docket Item 11-1 at 6. At that time, Sankara's $3,500.00 immigration release

bond was cancelled. *Id.* On November 30, 2012, and on July 17, 2013, DHS again submitted requests to the Embassy of Burkina Faso for a travel document in order to facilitate Sankara's return to Burkina Faso. Docket Item 11-2 at 53-54. The record is silent on whether the embassy ever responded to those requests.

Except for the short time between January 23, 2013, and February 4, 2013, when he was turned over to the Nassau County Police Department on a writ and was convicted of possessing a forged instrument and identify theft, Sankara remained in DHS custody from November 2012 until April 2014. Docket Item 11-2 at 3. He then was released once again—this time on an order of supervision. *Id.*[1]

In June 2014, Sankara was convicted of disorderly conduct, Docket Item 11-1 at 7, and in October 2014, he was convicted of criminal possession of a forged instrument, *id.* In December 2015, a New York State court jury found Sankara guilty of three counts of criminal possession of a forged instrument in the second degree. Docket Items 11-1 at 8, 11-2 at 57. He was sentenced to a term of imprisonment of three-and-one-half to seven years. *Id.* While incarcerated, Sankara moved to reopen his immigration removal proceedings, a motion that was denied by the BIA on June 2, 2017. Docket Item 11-2 at 12-13. The BIA also denied Sankara's motion to reconsider that motion to reopen on August 28, 2017. *Id.* at 11. Sankara then appealed those decisions to the

---

[1] During this period of DHS detention, Sankara filed a petition for writ of habeas corpus. *See* Petition for Writ of Habeas Corpus, *Sankara v. Holder*, No. 14-CV-110 (W.D.N.Y. Feb. 20, 2014), Docket Item 1. United States District Judge John T. Curtin dismissed the petition as moot after Sankara had been released from detention on April 23, 2014. Order, *Sankara v. Holder*, No. 14-CV-110 (W.D.N.Y. May 9, 2014), Docket Item 8.

4

United States Court of Appeals for the Second Circuit. *See Sankara v. Whitaker*, No. 17-2257 (2d Cir.).

While Sankara's New York State incarceration continued, on August 2, 2018, DHS submitted another formal request for a travel document to the Embassy of Burkina Faso. Docket Item 11-2 at 51. On August 28, 2018, Sankara asked the Second Circuit to stay his removal and requested that he not be placed in DHS custody after his parole from New York State incarceration. *See* Motion for Stay of Removal, *Sankara v. Whitaker*, No. 17-2257 (2d Cir. Aug. 28, 2018). That motion remains pending. *See* Order, *Sankara v. Whitaker*, No. 17-2267 (2d Cir. Jan 4, 2019), at 2. On September 7, 2018, Sankara completed his sentence and was taken into DHS custody. Docket Items 11-1 at 9, 11-2 at 4.

On October 15, 2018, Sankara filed a request with DHS for "Release on Humanitarian Parole." Docket Item 11-2 at 6-10. Sankara explained that he was diagnosed with HIV in 2010 and is "seriously concerned because [he] would have no access to the necessary health requirements for his condition" in Burkina Faso. *Id.* at 7.[2] He said that he will "not have the resources in Burkina Faso to financially provide [his] daily dose of Atripla ([his] retro viral prescription drug)," and that there is no one "who can assist [him] to buy this medication in Burkina Faso." *Id.* at 8. Thus, Sankara concluded that "[r]emoving [him] to Burkina Faso is a death sentence." *Id.* Sankara also cited U.S. Department of State reports on Human Rights practices in Burkina Faso, highlighting human rights issues there for people diagnosed with HIV/AIDS. *Id.*

---

[2] DHS has redacted Sankara's HIV status, presumably out of concern for his privacy, but he has disclosed his medical condition in his own filings. *See, e.g.*, Docket Item 1 at 5.

5

Sankara also said that he has children who are United States citizens and requested that he be granted release so that he could be a good father to them. *Id.* at 9.

DHS denied Sankara's request for release. *Id.* at 5.

On January 4, 2019, a Second Circuit panel granted in part and denied in part the government's motion to dismiss Sankara's petition. *See* Order, *Sankara v. Whitaker*, No. 17-2267 (2d Cir. Jan 4, 2019), at 1. The panel agreed with the government that it lacked jurisdiction to consider Sankara's challenge of the BIA's decision to deny reopening Sankara's case on June 2, 2017, because the appeal was filed more than thirty days after the ruling. *Id.* But the panel concluded that his petition "had ripened into a challenge to the BIA's August 2017 denial of [his] July 2017 motion to reconsider," which was timely and remains pending. *Id.* at 2. The panel deferred ruling on Sankara's remaining motions. *Id.*

Although the Second Circuit has not yet ruled on Sankara's motion to stay removal, "DHS [is] prevented from executing the immigration order of removal against Sankara due to a forbearance agreement between DHS and the Second Circuit." Docket Item 11-1 at 9; *see also Luna-Aponte v. Holder*, 743 F. Supp.2d 189, 191 (W.D.N.Y. 2010) (quoting affidavit of Donald J. Vaccaro, Jr.) (petitioner's "case is subject to an agreement between DHS and the Second Circuit which provides that DHS will not remove any alien who has requested a stay of removal with a petition for review of an immigration order of removal, unless a government motion opposing the stay is granted by the court or the alien's stay motion is otherwise denied.").

Sankara remains detained at the BFDF.

**ANALYSIS**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government contends that Sankara's detention is lawful under 8 U.S.C. § 1226(c), Docket Item 13 at 6, and does not violate his due process rights, *id.* at 12-25. Sankara makes three arguments that his continued detention is unlawful. Docket Item 1. First, he argues that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 13. Second, he argues that his prolonged detention violates his substantive due process rights. *Id.* at 13-14. Finally, he argues that his prolonged detention without a meaningful opportunity to be heard violates his procedural due process rights. *Id.* at 14. He also seeks an order enjoining the respondents from removing him from the jurisdiction of this Court pending the consideration of this petition. *Id.* at 15.

Because Sankara is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**I.    STATUTORY BASIS FOR DETENTION**

This Court first considers the statutory basis for Sankara's detention. The government contends that Sankara is detained under 8 U.S.C § 1226(c). Docket Item 13 at 6. "Broadly speaking, [§] 1226 governs the detention of immigrants who are not immediately deportable." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).

7

Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation." *Id.* at 53. "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

> The statute explicitly defines the beginning of the removal period as occurring 'on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.'"

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

In *Hechavarria*, the Second Circuit determined, under circumstances similar to those here, that an alien was detained under § 1226(c) and not under § 1231(a)(1)(6). *Id.* at 57. Although the alien in that case had an administratively final order of removal, the removal period begins on the latest of the three clauses in subparagraph (B) of § 1231(a)(1). *See* 8 U.S.C. § 1231(a)(1)(A). The BIA's decision regarding the petitioner's removal order in that case had been appealed to the Second Circuit, which "order[ed] a stay of removal of the alien," § 1231(a)(1)(B)(ii), "while his petition for review [wa]s pending." *Hechavarria*, 891 F.3d at 57. Therefore, his "removal period" would not begin until the Second Circuit issued its final order. *Id.*

In this case, Sankara has appealed two BIA decisions to the Second Circuit, and a Second Circuit panel has rejected the government's motion to dismiss part of Sankara's appeal: his request to review the BIA's decision not to reconsider its decision not to reopen his removal proceedings. *See* Order, *Sankara v. Whitaker*, No. 17-2267

8

(2d Cir. Jan 4, 2019), at 1.  But the Second Circuit has not yet ruled on Sankara's motion to stay his removal.  *See id.* at 2 ("ORDERED that ruling on Petitioner's remaining motions is DEFERRED").  Thus, as a purely textual matter, 8 U.S.C. § 1231(a)(1)(B)(ii) has not prevented the triggering of Sankara's removal period because the Second Circuit has not formally "order[ed] a stay of the removal of the alien."

That being said, DHS nevertheless is precluded from removing Sankara under the agency's forbearance agreement with the Second Circuit.  Docket Item 11-1 at 9.  Under this agreement, DHS will not remove any alien who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the alien's stay motion is otherwise denied.  *See Luna-Aponte v. Holder*, 743 F. Supp.2d 189, 191 (W.D.N.Y. 2010).

In *Hechavarra*, the Second Circuit looked not only at the statute's text but also at § 1231's "structure and logic."  891 F.3d at 55.  It observed that "[§] 1231 assumes that the immigrant's removal is both imminent and certain."  *Id.*  "The definition of the removal period is dependent upon the assumption that no substantive impediments remain to the immigrant's removal."  *Id.*  Because the combined effect of Sankara's Second Circuit proceeding and the forbearance agreement creates a "substantive impediment" to his removal, *id.*, this Court concludes that whatever it is that the Second Circuit is now reviewing in Sankara's immigration-related proceedings[3] sufficiently

---

[3] Sankara's Second Circuit appeal is not a "direct attack" on the BIA's removal decision but, at this point, an appeal of a motion to reconsider the BIA's decision not to reopen his removal proceedings.  Order, *Sankara v. Whitaker*, No. 17-2267 (2d Cir. Jan

9

constitutes "judicial review" of a "removal order."  So for all practical purposes, the forbearance agreement amounts to a "court order[ed] stay of the removal of the alien." *See id.* at 57 ("Because [the petitioner] has been granted a stay of removal while his petition for review is pending, there remains a very clear impediment to his removal— review by this Court"); *Hereda v. Shanahan*, 245 F. Supp.3d 521, 524 (S.D.N.Y. 2017) (vacated on appeal as moot) (citing *Argueta Anariba v. Shanahan*, 190 F. Supp.3d 344, 349 (S.D.N.Y. 2016), *Rone v. Shanahan*, 2016 WL 1047393, at *8 (S.D.N.Y. Mar. 10, 2016), and *Shehnaz v. Ashcroft*, 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004)) ("At least three judges in this district have concluded that the Government's forbearance policy combined with the Second Circuit's policy on motions to stay removal is the equivalent of a court-ordered stay"); *Enoh v. Sessions*, 236 F. Supp.3d 787, 793 n. 8 (2017);; *Luna-Aponte*, 743 F. Supp.2d at 197 (for the purposes of interpreting § 1231(a)(1)(B), "the forbearance policy is the equivalent of a court-ordered stay of removal").[4]

---

4, 2019), at 1.  But this Court has determined that § 1226 detention continues regardless of whether the appeal of a BIA decision regarding an order of removal is direct or indirect; instead, whether "removal proceedings [are] 'ongoing,'" is the question.  *See Enoh v. Sessions*, 236 F. Supp.3d 787, 795 (W.D.N.Y. 2017) (citing *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016) ("Even though the case at bar concerns a stay resulting from review of an order denying a motion to reconsider/reopen, as opposed to a newly commenced [removal] proceeding" petitioner's detention was under § 1226 as it was "ongoing"); *see also Kudishev v. Aviles*, 2015 WL 8681042, at *4 (D.N.J. Dec. 10, 2015) (declining to "distinguish between a stay issued in connection with direct attack on a final order of removal and a stay issued in connection with a motion to reopen a final order of removal").

[4] *But see Mathews v. Philips*, 2013 WL 5288166 (W.D.N.Y. Sept. 18, 2013) (detention of alien subject to final order of removal was governed by § 1231 regardless of forbearance agreement); *Leslie v. Herron*, 2010 WL 4226561 (W.D.N.Y. Oct. 26, 2010) (same).

Thus, Sankara's removal period has not begun, and this Court agrees with the government that he is detained under § 1226(c). Because Sankara is not detained under § 1231(a), this Court rejects his argument that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[5] *See Jennings v.Rodriguez*, 138 S. Ct. 830, 846 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 529 (2003)) ("§ 1226(c) has 'a definite termination point': the conclusion of removal proceedings . . . [which] marks the end of the Government's detention authority under § 1226(c)").

## II.    DUE PROCESS

Sankara also contends that his continued detention violates his substantive and procedural due process rights. Docket Item 1 at 13-14. Those arguments are foreclosed by *Demore v. Kim*, 538 U.S. 510 (2003). Although "even aliens whose presence in this country is unlawful[] have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments," *Plyer v. Doe*, 457 U.S. 202, 210 (1982), Congress has "broad power over naturalization and immigration [permitting it to] make[] rules that would be unacceptable if applied to

---

[5] Even if this Court is incorrect and 8 U.S.C. S 1231(a) governs Sankara's detention, his petition is premature. If Sankara is being held under § 1231(a), his removal period would have begun the day he was released from New York State custody, September 7, 2018. *See* 8 U.S.C. § 1231(a)(1)(B)(iii). Although § 1231 expressly requires the government to remove an alien within ninety days of the beginning of the removal period, § 1231(a)(1)(A)—which would have given the respondents until December 6, 2018—the statute provides that an alien "may be detained beyond the removal period," § 1231(a)(6), as long as removal is "reasonably foreseeable," *Zadvydas*, 533 U.S. at 699. And for the first six months, detention is presumptively reasonable. *Id.* at 701. If § 1231(a)(6) governs Sankara's detention, less than two months of the presumptively reasonable period has passed. And Sankara has offered nothing to overcome that presumption that his removal is foreseeable.

11

citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)). As "individualized bond hearings are ineffective [at ensuring successful removal] or burdensome," *id.* at 528 (internal citation omitted), Congress is permitted to deprive Sankara of his due process right to an individualized determination as to dangerousness or flight risk "for the limited period of his removal proceedings." *Id.* at 531. And although an "individualized determination as to [] risk of flight and dangerousness" would be required by due process if "continued detention bec[omes] unreasonable or unjustified," *id.* at 532 (Kennedy, J., concurring), in Sankara's case, he has been in DHS custody only for about four months, well within the time periods expressly considered acceptable in *Demore*, *see id.* at 529 (when "the alien appeals the decision of the [IJ to the BIA], appeal takes an average of four months, with a median time that is slightly shorter"). Therefore, this Court rejects Sankara's due process claims without prejudice to filing another petition if his § 1226(c) detention becomes unreasonably prolonged, *see Hechavarria v. Sessions*, 2018 WL 5776421, at *6 (W.D.N.Y. Nov. 2, 2018) (quoting *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018)) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing."), or if, after his order of removal becomes final, his actual removal is no longer reasonably foreseeable, *see Zadvydas*, 533 U.S. at 701.

## **CONCLUSION**

For the reasons stated above, Sankara's petition for writ of habeas corpus, Docket Item 1, is DENIED without prejudice. For the same reasons, his motions for release from custody, Docket Items 3 and 4, are DENIED. Sankara's motion to appoint

12

counsel, Docket Item 9, and his motion to submit exhibits in support of his request to enjoin the respondents from transferring him, Docket Item 10,[6] are DENIED as moot.

SO ORDERED.

Dated: January 18, 2019
Buffalo, New York

                                                       *s/ Lawrence J. Vilardo*
                                                       LAWRENCE J. VILARDO
                                                       UNITED STATES DISTRICT JUDGE

---

[6] This motion appears to include some entirely new allegations and claims, including allegations that the respondents are not providing adequate medical care. *See* Docket Item 10 at 1. This proceeding involves Sankara's petition for a writ of habeas corpus—in other words, a request to be released from unlawful detention. If Sankara has constitutional claims unrelated to the validity of his detention, he must raise them in a new, separately docketed proceeding.